**NOT FOR PUBLICATION**  **CLOSED**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GE HEALTHCARE FINANCIAL SERVICES, | |
| Plaintiff, | Civil Action No. 05-833(SDW) |
| v. | |
| NEW BRUNSWICK X-RAY GROUP, PA, | **OPINION** |
| Defendant. | January 3, 2007 |

**WIGENTON, District Judge**

Before the Court is GE Healthcare Financial Services' ("Plaintiff") Motion for a Default Judgment pursuant to Federal Rule of Civil Procedure 55(b)(2) (the "Motion") against New Brunswick X-Ray Group, PA ("Defendant"). The Motion was decided without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated below, the Motion is granted.

**I.      Background**

On or about August 28, 2001, Defendant entered into a Master Lease Agreement and Equipment Schedules (collectively, "Agreement No. 1") with Plaintiff under Account Nos. 8517037, 8517038 and 8517039 pursuant to which Plaintiff agreed to lease the following equipment: (1) one GE NX1 CT Scanner; (2) one Senographe DMR Mammography and (3) one Logiq 700 Ultrasound (collectively, "Equipment No. 1"), and Defendant agreed to make certain monthly payments to Plaintiff. (Aff. of Robert Krol[1] in Support of Motion for Default Judgment ("Krol Aff.") 1-2)

---

[1] Robert Krol is a Workout Analyst for Plaintiff. In such capacity, he supervises and handles delinquent accounts and maintains the books and records concerning all of the instruments and contracts referenced in the Complaint in this matter.

Defendant accepted Equipment No. 1 on or about September 27, 2001.  (Krol Aff. 2)

Pursuant to Agreement No. 1, Defendant agreed to make 63 monthly payments to Plaintiff as follows:

Schedule 8517037 - 3 months at $0; 3 months at $9,252.00; and 57 months at $10,951.92;

Schedule 8517038 - 3 months at $0; 3 months at $1,008.59; and 57 months at $1,088.76; and

Schedule 8517039 - 3 months at $0; 3 months at $2,069.73; and 57 months at $2,512.91.

(Krol Aff. 2)

On or about October 11, 2001, Defendant entered into a Master Lease Agreement and Equipment Schedule (collectively, "Agreement No. 2") with Plaintiff, under Account No. 8517508 pursuant to which Plaintiff agreed to lease the following equipment: (1) one Kodak M6B Automatic Film Processor; (2) one NJ65, 8 Lamp, 36 Watt Viewing Surface and (3) one Shimadzu R & F System, Tilting Radiographic/Fluoroscopic Table (with all additions and accessories (collectively, "Equipment No. 2"), and Defendant agreed to make certain monthly payments to Plaintiff.  (Krol Aff. 2)  Defendant accepted Equipment No. 2 on or about January 29, 2002.  (Krol Aff. 2) Pursuant to Agreement No. 2, Defendant agreed to make 36 monthly payments of $3,388.88 to Plaintiff.  (Krol Aff. 2)

On or about December 28, 2001, Defendant entered into a Maxi Service Lease Agreement ("Agreement No. 3") with Plaintiff, under Account No. 8518470, pursuant to which Plaintiff agreed to lease (1) one GE Logiq 700 Expert Ultrasound System plus all additions and accessories ("Equipment No. 3"), and Defendant agreed to make certain monthly payments to Plaintiff.  (Krol Aff. 2-3) Pursuant to Agreement No. 3, Defendant agreed to make 63 monthly payments to Plaintiff as follows: 3 payments at $0; followed by 3 payments of $2,541.00; followed by 57 monthly

payments of $2,741.00. (Krol Aff. 3) Agreement Nos. 1, 2 and 3 (collectively, the "Agreements") provide that an event of default will occur thereunder if, <u>inter alia</u>, Defendant should fail to make any payment to Plaintiff after same becomes due and should fail to cure that breach within 10 days. (Krol Aff. 3)

Defendant failed to make payment to Plaintiff as required under the Agreements. (Krol Aff. 3) Consequently, Plaintiff served a notice of default (the "Notice of Default") on Defendant on January 13, 2005. (Krol Aff. 3) In the Notice of Default, Plaintiff demanded that Defendant cure its default under the Agreements and make payment of the sum of $168,508.33 by January 23, 2005. (Krol Aff. 3) Despite such written demand, Defendant failed to make payment to Plaintiff and, accordingly, Plaintiff declared the accelerated sums due under the Agreements to be immediately due and owing. (Krol Aff. 3) Paragraph 8(b) of Agreements 1 and 2 provides in pertinent part:

> Upon the occurrence of an event of default hereunder, Lessor shall have the non-exclusive option to: (i) declare the aggregate rents (or, with respect to non-GE Equipment, the Stipulated Loss Value (see Schedule)) payable under any or all of the Schedules immediately due and payable; (ii) declare all other amount(s) due Lessor hereunder immediately due and payable; (iii) collect from Lessee, on all monies due but unpaid for more than ten days, a late charge of five cents per dollar on, and in addition to, the amount of all such monies, but not exceeding the lawful maximum; (iv) take possession of the Equipment and remove same from its existing location(s) without notice to or consent of Lessee; and store and/or dispose (by public sale or otherwise) of the Equipment at its then existing location(s) at no charge to Lessor; (v) sell or lease any or all items of Equipment at public or private sale or lease at such time or times as Lessor may determine and if notice thereof is required by law, any notice in writing of any such sale or lease by Lessor to Lessee not less than ten days prior to the date thereof shall constitute reasonable notice thereof to Lessee; (vi) otherwise dispose of, hold, use, operate, or keep idle such Equipment, all as Lessor, in its sole discretion, may determine; and (vii) assert any other remedies available to Lessor at law or in equity (including, without limitation, under the Uniform Commercial

>  Code).

(Krol Aff., Exs. A and B)

> Paragraph 14(b) of Agreement 3 provides in pertinent part:
>
>> Upon occurrence of an event of default hereunder, GE shall have the option to do one or more of the following: (i) declare the aggregate monthly charges payable under any or all of this Agreement immediately due and payable; (ii) declare all other amount(s) due GE hereunder immediately due and payable; (iii) collect from Lessee, on all monies due but unpaid for more than ten days, a late charge of five cents per dollar on, and in addition to, the amount of all such monies, but not exceeding the lawful maximum; (iv) take possession of the Equipment and remove same from its existing location(s) without notice to or consent of Lessee; and store and/or dispose (by public sale or otherwise) of the Equipment at its then existing location(s) at no charge to GE; (v) sell or lease any or all items of Equipment at public or private sale or lease at such time or times as GE may determine and if notice thereof is required by law, any notice in writing of any such sale or lease by GE to Lessee not less than ten days prior to the date thereof shall constitute reasonable notice thereof to Lessee; (vi) otherwise dispose of, hold, use, operate, or keep idle such Equipment, all as GE in its sole discretion, may determine; and (vii) assert any other remedies available to GE at law or in equity (including, without limitation, under the Uniform Commercial Code).

(Krol Aff, Ex. C)

In or around June 2005, Plaintiff seized Equipment Nos. 1, 2 and 3. (Krol Aff. 5) Plaintiff sold Equipment Nos. 1 and 3 in a commercially reasonable manner by selling the equipment to the dealers Ambassador Medical Equipment and Gold Seal causing Plaintiff to realize $211,381.62 from those sales. (Krol Aff. 5) Because Equipment No. 2 had no resale value, it could not be sold. (Krol Aff. 5)

Plaintiff incurred $54,350 for the removal of Equipment Nos. 1, 2 and 3. (Krol Aff. 5) Plaintiff alleges it is entitled to recover this cost pursuant to paragraph 8(c) of Agreements 1 and 2,

which provides that, "[a]fter deducting all expenses of retaking, repairing, holding, transporting, selling and/or reletting the Equipment, the net proceeds (if any) from such sale or reletting by Lessor shall be applied against Lessee's obligation hereunder." (Krol Aff., Exs. A and B) The language of Agreement 3 is slightly different but still allows Plaintiff to recover the costs of removal. (Krol Aff., Ex. C) Paragraph 14(c) of Agreement 3 states, "Lessee shall pay GE's actual attorney's fees and other costs and expenses incurred in connection with the enforcement, assertion, defense or preservation of GE's rights and remedies under this Agreement." (Krol Aff., Ex. C)

Plaintiff seeks $457,580.38 in compensatory damages. (Krol Aff. 5) The amount unpaid under Agreement Nos. 1, 2 and 3, as of January 13, 2005, is $668,962. (Krol Aff. 5) From that amount subtract $211,381.62, which is the amount Plaintiff realized from the sale of Equipment Nos. 1 and 3 (Equipment No. 2 could not be sold and has no resale value). (Krol Aff. 6) Next, $54,350 is added to cover the costs incurred for removal of Equipment Nos. 1, 2 and 3. Plaintiff asserts it is owed a total of $511,930.38, plus interest from January 13, 2005 and costs of suit. (Krol Aff. 6).

**II.     Discussion**

**A.     Jurisdiction**

This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1332(a) in that the amount in controversy is in excess of $75,000, exclusive of interest and costs, and there is diversity between the parties.

**B.     Default Judgment**

An application for entry of default judgment must contain evidence, by affidavit and documents, of: (1) the entry of a default pursuant to Federal Rule of Civil Procedure 55(a); (2) the absence of any appearance by any party to be defaulted; (3) that the defendant is neither an infant nor

incompetent; (4) that the defendant has been validly served with all pleadings; (5) the amount of the judgment and how it was calculated; and (6) an affidavit of non-military service in compliance with the Soldiers' and Sailors' Relief Act, 50 U.S.C. App. §§ 501, et seq., 520; see Fed. R. Civ. P. 55(b), 54(b); L. Civ. R. 7.1, 58.1.

By Order dated January 5, 2006, the Honorable William G. Bassler denied without prejudice Plaintiff's motion for default judgment because it failed to submit the requisite affidavits and documents with respect to the fifth requirement, the amount of the judgment and how it was calculated.

Plaintiff renewed its motion for default judgment, which is the Motion before this Court. Plaintiff has satisfied the fifth requirement in that it has submitted affidavits and documents, which provide detail of the judgment it seeks. As the six prerequisites for an application of default judgment are satisfied, the Court examines the merits of the Motion.

**i.    Liability**

Federal Rule of Civil Procedure 55(b)(2) governs the district court's entry of default judgment. A party seeking default judgment "is not entitled to a default judgment as of right, even when defendant is technically in default and that fact has been noted under Rule 55(a)." Franklin v. National Maritime Union of America, 1991 U.S. Dist. LEXIS 9819, * 3-4 (D.N.J. 1991) (quoting 10 Wright, Miller & Kane, Federal Practice and Procedure § 2685 (1983)), aff'd, 972 F.2d 1331 (3d Cir. 1992). Rather, the district court has the discretion to enter default judgment, although entry of default judgments are disfavored as decisions on the merits are preferred. United Stated v. $55,518.05 in U.S. Currency, 728 F.2d 192, 194-95 (3d Cir. 1984) (citing Tozer v. Charles A. Krause Milling Co., 189 F.2d 242, 244-45 (3d Cir. 1951)). As such, when determining whether to

grant default judgment, the district court should examine:

> the potential amount of damages; whether issues of material fact or substantial public concern are implicated; whether the default is primarily technical; whether the moving party has been substantially prejudiced by the delay involved; whether the grounds for default are clearly established or in doubt; whether the default was attributable to good faith, mistake, or excusable neglect; and whether the court may later be obliged to set aside the default.

The Boards of Trustees of the Operating Engineers Local 825 Welfare Fund v. Robert Silagy Landscaping Inc., 2006 U.S. Dist. LEXIS 82475, * 6 (D.N.J. 2006) (citing Franklin v. National Maritime Union of America, 1991 U.S. Dist. LEXIS 9819, * 1 (D.N.J. 1991). "A default judgment entered by the court binds the party facing the default as having admitted all of the well pleaded allegations in the plaintiff's complaint." The Boards of Trustees of the Operating Engineers Local 825 Welfare Fund, 2006 U.S. Dist. LEXIS 82475, * 7 (quoting Angelo Iafrate Constr., LLC v. Potashnick Constr., Inc., 370 F.3d 715, 722 (8th Cir. 2004)).

Here, Plaintiff is entitled to default judgment on liability against Defendant. Plaintiff has submitted proof of service of the Motion both upon Defendant at its business address and Defendant's counsel. In fact, Plaintiff served its initial motion for default judgment on Defendant at its business address. Plaintiff has submitted proof of service of the Summons and Complaint on Defendant. Plaintiff obtained an entry of default against Defendant and subsequently made a motion for a writ of replevin. Defendant submitted opposition to Plaintiff's motion for a writ of replevin. That motion was terminated when Defendant surrendered the leased equipment. This evidence demonstrates that Defendant had ample notice of the Complaint and the Motion and chose not to respond to them. Thus, the Court will treat the allegations in the Complaint as to liability as true and admitted by Defendant.

Further weighing in favor of granting default judgment on liability is the public's interest in ensuring that a business entity will face repercussions when it breaches a contract and fails to address same when hailed into court. Plaintiff continues to be prejudiced by delay in resolution of this case. It cannot collect money owed under the Agreements without a judgment. Defendant has failed to respond to and/or oppose the Motion for 8 months and, as stated above, the grounds for default judgment are clearly established. There is no evidence that Defendant's default is attributable to good faith, mistake or excusable neglect. There is no evidence from which the Court can infer that it would have to vacate a default judgment entered against Defendant in this matter. For these reasons, a default judgment against Defendant on liability is warranted.

**ii.    Damages**

"The only allegations in a plaintiff's complaint that are not treated as true upon the entry of a default judgment are those pertaining to the amount of damages. The Boards of Trustees of the Operating Engineers Local 825 Welfare Fund, 2006 U.S. Dist. LEXIS 82475, * 8 (citing Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990)). When damages are for a sum certain or a sum calculable, a district court may enter final judgment without further evidentiary hearing. The Boards of Trustees of the Operating Engineers Local 825 Welfare Fund, 2006 U.S. Dist. LEXIS 82475, * 9 (citing Fed. R. Civ. P. 55(b)(1). A sum certain is one where "there is no doubt as to the amount to which a plaintiff is entitled as a result of the defendant's default." The Boards of Trustees of the Operating Engineers Local 825 Welfare Fund, 2006 U.S. Dist. LEXIS 82475, * 9 (quoting KPS Assocs., Inc. v. Designs By FMC, Inc., 318 F.3d 1, 19 (1st Cir. 2003)). However, "[e]ven when faced with claims for uncertain damages a district court may still, using its discretion, decline to hold a Rule 55(b)(2) hearing, particularly where the "'amount claimed [is] capable of ascertainment from

definite figures contained in the documentary evidence or in detailed affidavits.'" The Boards of Trustees of the Operating Engineers Local 825 Welfare Fund, 2006 U.S. Dist. LEXIS 82475, * 9-10 (quoting KPS Assocs., Inc., 318 F.3d at 21.

Here, Plaintiff is entitled to compensatory damages in the amount of $511,930.38. Plaintiff has substantiated that Defendant owes it this sum using the Affidavit of Robert Krol, thus a Rule 55(b)(2) hearing is not necessary. As explained by Mr. Krol, the total amount owed to Plaintiff under the Agreements is $668,962. From this amount, $211,381.62 is subtracted, which is the credit for the sale of Equipment Nos. 1 and 3. Added to this amount is $54,350 for costs incurred for the removal of Equipment Nos. 1, 2 and 3.

Plaintiff is entitled to $35,580.78 in interest[2] that has accrued on $511,930.38 from January 12, 2005 as follows:

For 2005 - $511,930.38 x .03 x .967 (352 days divided by 365 days) = $14,851.10

For 2006 - $511,930.38 x .04 = $20,477.22

For 2007 - $511,930.38 x .06 = $252.46 (represents 3 days of interest in 2007).

Further, Plaintiff is entitled to attorneys' fees and costs in the total amount of $18,157.97. Plaintiff's counsel has provided an affidavit in support of this request. Plaintiff does not seek an award of attorneys' fees and costs for the work done on its renewed motion for default judgment.

---

[2]Pursuant to Rule 4:42-11(b) of the Rules Governing the Courts of the State of New Jersey, the interest rates for 2005, 2006 and 2007 are 3%, 4% and 6% respectively.

**III.    Conclusion**

Defendant is liable for breach of the Agreements, and default judgment shall be entered against it in the total amount of $565,669.13.

**S/Susan D. Wigenton, U.S.D.J.**